UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH JENNINGS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>SEATTLE HOUSING AUTHORITY,<br><br>　　　　　　Defendant. | CASE NO. C08-1820JLR<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

This matter comes before the court on Defendant Seattle Housing Authority's ("SHA") motion to dismiss and/or for summary judgment (Dkt. # 65). SHA first requests that the court dismiss Plaintiff Kenneth Jennings's 42 U.S.C. § 1983 claim for failure to state a claim upon which relief can be granted or, alternatively, grant summary judgment. SHA next requests that the court dismiss Mr. Jennings's remaining claims for lack of subject matter jurisdiction. Having considered the motion, as well as all papers filed in

ORDER- 1

support and opposition, as well as the balance of the record, and deeming oral argument unnecessary, the court GRANTS the motion (Dkt. # 65) and ORDERS as follows:

(1) The court grants summary judgment in favor of SHA with respect to Mr. Jennings's § 1983 claim; and

(2) The court declines under 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction as to Mr. Jennings's remaining state-law claims, and dismisses these claims without prejudice.

## II. BACKGROUND

SHA is a public housing authority that provides rental housing and assistance to over 26,000 individuals in Seattle, Washington. (LeBlanc Decl. (Dkt. # 66) ¶ 2.) SHA operates multiple low-income public housing apartment buildings, including Bell Tower Apartments ("Bell Tower"). Mr. Jennings is a resident of Bell Tower (*id.* ¶ 6) and a self-described tenant rights activist seeking to promote tenant participation in the management of low-income public housing (Jennings Decl., May 10, 2010 (Dkt. # 68) ¶ 15).

This lawsuit stems from an ongoing series of disputes between Mr. Jennings and SHA employees. Mr. Jennings, proceeding *pro se* and *in forma pauperis*, filed his original complaint in January 2009 and has since filed three amended complaints. (*See* Dkt. ## 4, 5, 11, 31.) The operative complaint is now Mr. Jennings's third amended complaint. (*See* 3d Am. Compl. (Dkt. # 31).) Although the third amended complaint establishes the general framework for the parties and claims involved in this action, the court is mindful that this action encompasses more than the limited set of facts alleged by Mr. Jennings therein. This action does not, however, cover an unlimited scope. Because

ORDER- 2

Mr. Jennings is proceeding *pro se*, the court will construe his pleadings and briefing liberally, *see Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001), but will not stretch them beyond all recognition. To the extent Mr. Jennings wishes to pursue claims not raised within the general scope of the third amendment complaint, he must do so elsewhere.

**A.     Tenant File**

Mr. Jennings initially filed suit in connection with the alleged disclosure of private information in his tenant file maintained by SHA at Bell Tower. (*See generally* Compl. (Dkt. # 4); Am. Compl. (Dkt. # 5).) Mr. Jennings states that he received a report that Stephen Holiwell, the resident manager of Bell Tower, directed William Knight, another tenant and a back-up assistant resident manager, to review Mr. Jennings's tenant file. (Jennings Decl., Jan. 22, 2009 (Dkt. # 7) ¶ 10.) Mr. Jennings states that Nancy Dillon, a tenant[1], told him that Mr. Knight had discussed his tenant file with Ms. Dillon while the two were doing laundry together. (*Id.*) This distressed Mr. Jennings, and caused him embarrassment and inconvenience. (*Id.* ¶ 12.) He filed an administrative complaint with James Fearn, SHA's general counsel, about the incident. (*Id.* ¶ 13.) The administrative complaint was dismissed. (*Id.* ¶ 14.)

**B.     Election**

In early March 2009, after the filing of this lawsuit, Mr. Jennings became a candidate in the election for Bell Tower resident council chairman. (Jennings Decl., Feb.

---

[1] Ms. Dillon subsequently became a back-up assistant resident manager. (Jennings Decl., June 19, 2009 (Dkt. # 28-3) ¶ 18.)

11, 2010 (Dkt. # 57-4) ¶ 5.)  Mr. Jennings alleges that SHA Property Manager Sarah Van Cleve, as well as Ms. Dillon, at this time a back-up assistant resident manager, and Bell Tower residents Leon Bailey, Andrea Carothers, and Robert Judy, threatened, intimidated, and harassed him in an attempt to prevent him from being a candidate.  (Jennings Decl., June 19, 2009, ¶ 20.)  Nevertheless, Mr. Jennings was elected as resident council chairman on April 3, 2009.  (Jennings Decl., June 24, 2009 (Dkt. # 29) ¶ 1.)

After the election, "SHA Property Management and support staff began an active campaign to undermine [Mr. Jennings's] position as Resident Council Chairman and to intimidate tenants that supported [his] efforts."  (*Id*. ¶ 6.)  Among other actions, SHA refused to turn over the keys to the resident council office to Mr. Jennings (*id*. ¶ 7), did not permit him access to the resident council bank account, debit card, and bulletin board (*id*. ¶ 8), and suspended recognition of the resident council (*id*. ¶ 10).  Mr. Jennings also asserts that SHA employees threatened Bell Tower residents that they could lose their housing if they associated with him.  (*Id*. ¶ 15.)

Throughout the course of this lawsuit, Mr. Jennings refused to participate in his annual review and disputed his monthly rent with Jake LeBlanc (Jennings Decl., Mar. 20, 2009 (Dkt. # 19) ¶¶ 3-20); received eviction notices (Jennings Decl., May 10, 2009, ¶ 12); was sued in state court by Ms. Dillon (*id*); and submitted numerous lease violation and vandalism grievances to which SHA allegedly did not respond (*id*. ¶ 14).  The court has reviewed all of the declarations submitted in this action, but the details of many of these incidents remain vague.

### C. Third Amended Complaint and Causes of Action

In his third amended complaint, Mr. Jennings brings suit against both SHA and the United States Department of Housing and Urban Development ("HUD"); he does not name any individuals as defendants in this action.[2] In his first two causes of action, Mr. Jennings alleges that SHA violated the First and Fourteenth Amendments to the United States Constitution and violated 42 U.S.C. § 1983, respectively:

> 1. Defendant SHA through the acts of SHA Property Manager Sarah Van Cleve violated the 1st amendments [sic] and 14th Amendments [sic] of the United States Constitution by interfering with plaintiff's right to be a candidate for the Bell Tower Resident Council and to function as its elected Chairman.
>
> 2. Defendant SHA through the acts of SHA Property Manager Sarah Van Cleve violated 42 U.S.C. section 1983, the Federal Civil Rights Act of 1871 for interfering with plaintiff's right to be [sic] candidate for the Bell Tower Resident Council and to function as its elected Chairman.

(*Id.* at 6 ¶¶ 1-2.) Though pleaded as separate claims, the court will treat these claims as a single § 1983 claim for alleged constitutional violations. Section 1983 creates a cause of action for the vindication of federal rights, but does not establish substantive rights in and of itself. *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004).

By its plain terms, Mr. Jennings's § 1983 claim focuses on the acts of Ms. Van Cleve in connection with his election to and functions as Resident Council Chairman. (Third Am. Compl. at 6-7 ¶¶ 1-2.) Mr. Jennings, however, interprets his § 1983 claim to encompass an expansive collection of constitutional rights and alleged regulatory

---

[2] On December 31, 2009, Mr. Jennings filed a proposed complaint to add Ms. Van Cleve as a defendant. (Dkt. # 55.) The parties, however, stipulated to strike the proposed complaint. (Dkt. # 63.) The court approved the stipulation and struck the proposed complaint. (Dkt. # 64.)

violations. (Resp. (Dkt. # 67) at 14-20.) The court expresses skepticism that all of these claims have been properly raised in this lawsuit, but need not delineate the precise scope of Mr. Jennings's § 1983 claim for present purposes.

Mr. Jennings also pleads claims against both SHA and HUD for violations of the Privacy Act. At a hearing on August 24, 2009, however, the court dismissed all of Mr. Jennings's Privacy Act claims and dismissed HUD as a defendant. (*See* Dkt. # 44; *see also* Dkt. # 50.)

Finally, Mr. Jennings pleads claims against SHA for violation of Washington's Residential Landlord-Tenant Act of 1973 ("RLTA"), chapter 59.18 RCW; Washington's public records act, chapter 42.56 RCW; and SHA's ethics policy. (3d Am. Compl. at 7-8 ¶¶ 7-9.)

### III.   JURISDICTION

This court has jurisdiction over Mr. Jennings's § 1983 claim pursuant to 28 U.S.C. § 1331 and over Mr. Jennings's remaining claims pursuant to 28 U.S.C. § 1367.

### IV.   ANALYSIS

**A.   Preliminary Matters**

At the outset, the court determines that it will treat SHA's motion as a motion for summary judgment to the extent it challenges Mr. Jennings's § 1983 claim. Mr. Jennings requests that the court take this approach (Resp. at 5), and the court agrees that it is the proper one. SHA moves under Rules 12(b)(6) and 56 of the Federal Rules of Procedure, but argues that the court should treat its motion as a motion to dismiss. At this stage of the proceedings, however, the court is not persuaded to consider the motion under the

ORDER- 6

standards of Rule 12(b)(6), especially in the face of numerous declarations and other evidence submitted in the record.[3] To do so would artificially constrict the focus of this lawsuit. Furthermore, because both parties address SHA's motion as a motion for summary judgment, the court declines to provide an additional opportunity to present material pertinent to the motion.

**B.  Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. The non-moving party "must present affirmative evidence to make this showing." *Id*. Furthermore, as the Ninth Circuit teaches, "[b]ald assertions that genuine

---

[3] SHA also suggests that the court may treat the motion as a motion for judgment on the pleadings under Rule 12(c). (Reply (Dkt. # 69) at 1 n.1.) The court declines to do so for the same reasons.

ORDER- 7

issues of material fact exist are insufficient," and a mere scintilla of evidence supporting a party's position will not do. *Id*.

**C.    42 U.S.C. § 1983 and Municipal Liability**

A municipal entity, such as SHA, may be held liable under § 1983 when a governmental policy or custom causes the constitutional harm, but may not be held liable under *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). A plaintiff may establish municipal liability by proving (1) "that a [municipal] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "that the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy"; or (3) "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (quotations omitted); *see also Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). A municipality may also be held liable on a theory of deliberate indifference. *Christie v. Iopa*, 176 F.3d 1231, 1240 (9th Cir. 1999).

SHA argues that summary judgment is appropriate as to Mr. Jennings's § 1983 claim because there is no basis upon which to hold SHA liable for the actions of Ms. Van Cleve or any other SHA employees or Bell Tower residents. SHA does not address the underlying merits of Mr. Jennings's alleged constitutional violations, although it notes that it disputes these claims. (Reply at 4.) For purposes of this order, the court

will assume, without deciding, that the actions complained of by Mr. Jennings would be sufficient to make out a viable constitutional claim.  The court thus considers only the more limited question: has Mr. Jennings met his burden to show that SHA can be held liable for the actions of its employees and others under § 1983?  The answer, on this record, is no.

To begin with, Mr. Jennings does not specify in the third amended complaint on what basis he believes SHA can be held liable under § 1983.  Mr. Jennings focuses on the actions of Ms. Van Cleve, but also identifies a range of other SHA employees and Bell Tower tenants, including Mr. Bailey, Ms. Dillon, Mr. Fearn, Mr. Holiwell, Mr. Judy, and Mr. Knight, who he contends have violated his constitutional rights.  Yet Mr. Jennings does not explain how the actions of these individuals are sufficient to expose SHA to liability absent a *respondeat superior* theory.  Notably, Mr. Jennings does not allege that these individuals acted pursuant to an official SHA policy or a longstanding SHA practice, does not allege that any of these individuals possess final policymaking authority, does not allege that SHA employees with final policymaking authority reviewed or approved of the actions described in the third amended complaint, and does not allege deliberate indifference.  It appears, rather, that Mr. Jennings seeks to hold SHA liable under a *respondeat superior* theory in his third amended complaint.

In his briefing, Mr. Jennings identifies a broader range of individuals upon whose actions he contends SHA may be held liable under § 1983.  (Resp. at 20-21.)  These individuals include Mr. Bailey, Ms. Carothers, Ms. Dillon, Mr. Fearn, Mr. Holiwell, Mr. Judy, Mr. Knight, Mr. LeBlanc, Ms. Van Cleve, and Ellen Ziontz.  He asserts that the

evidence in the record is sufficient to give rise to a genuine issue of material fact as to SHA's liability on, in essence, a pattern or practice theory. Mr. Jennings argues:

> The evidence and material facts presented to the court could lead a trier of fact to conclude that SHA's "policies and customs" authorized, approved and encouraged (1) acts of serious hostility by employees and agents toward tenants like Jennings who attempt to transform low income housing Resident Councils into tenant rights organizations as authorized by the Code of Federal regulations; and that (2) the systematic denial of grievance and complaint procedures to address and resolve legitimate disputes, although a separate Constitutional violation by itself, is one of the means by which SHA authorizes, approves, and encourages unlawful conduct by staff and the tenants who act with staff for some common purpose. It does so by shielding and protecting tenants and SHA staff who act in unlawful ways to undermine legitimate tenant rights oriented activities of the type Jennings engaged in at Bell Tower Apartments.

(*Id*. at 22.)

### 1. Pattern or Practice

In order to establish municipal liability on a "pattern or practice" theory, a plaintiff must demonstrate either a formal governmental policy or a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Gillette*, 979 F.2d at 1346. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The court finds that Mr. Jennings has not demonstrated that SHA may be held liable under § 1983 on a pattern or practice theory of liability. First, Mr. Jennings has not identified a formal SHA policy connected to the factual allegations of this case. Second, Mr. Jennings has also not presented evidence that the actions complained of in

this case arise from a longstanding practice or custom of SHA. Though Mr. Jennings identifies a range of actions taken by various SHA employees and Bell Tower residents, who Mr. Jennings characterizes as agents of SHA, these actions, without more, do not rise to a level of sufficient duration, frequency, and consistency so as to constitute SHA's "traditional method of carrying out policy." *Id.*

      Mr. Jennings argues that SHA, through its policies and practices, encourages its employees to oppose tenant activities aimed at organizing tenant resident councils. (Jennings Decl., May 10, 2010, ¶ 15.) Mr. Jennings's declaration, however, provides no specifics and remains too generalized to satisfy his burden on summary judgment. *Galen*, 477 F.3d at 658. Likewise, the court is not persuaded that the declaration of Mary Jo Cetak gives rise to a genuine issue of material fact as to pattern or practice. (*See* Cetak Decl. (Dkt. # 35-3).) Even accepting as true Ms. Cetak's statements regarding her three-year-old experiences at another SHA apartment complex, the court cannot extrapolate from those experiences for purposes of holding SHA liable in connection with Mr. Jennings's claims. Mr. Jennings has not submitted evidence to show that SHA's alleged actions with respect to Ms. Cetak were undertaken pursuant to a policy or practice of SHA, or that any of the same SHA employees are involved in this case.

      The court is also not persuaded that Mr. Jennings has submitted evidence to show that SHA systematically denies grievances. (Resp. at 23 (citing *Saxton v. Housing Authority of City of Tacoma*, 1 F.3d 881 (9th Cir. 1993).) This type of claim is not alleged by Mr. Jennings in his third amended complaint. Moreover, even if this claim

ORDER- 11

fell within the scope of this case, Mr. Jennings has not presented sufficient evidence to show a genuine issue of material fact as to pattern or practice on this basis.

### 2. Official With Final Policymaking Authority

A municipal entity "can be liable for an isolated constitutional violation when the person causing the violation has 'final policymaking authority.'" *Christie*, 176 F.3d at 1235; *see Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). "Whether an official has final policymaking authority is a question for the court to decide based on state law." *Christie*, 176 F.3d at 1235; *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Here, the court finds that Mr. Jennings has not shown a genuine issue of material fact regarding whether any of the SHA employees involved in the present dispute held final policymaking authority. Mr. Jennings does not address this issue in his briefing, pleadings, or evidence. The only evidence in the record that touches on this point, however, cuts against Mr. Jennings. In his declaration, Mr. LeBlanc explains:

> The Director of Housing Operations and a small number of other SHA employees at the Director level, along with two Deputy Executive Directors and SHA's Executive Director, constitute SHA's highest level of decision makers. This is the group of employees at SHA that have the authority and responsibility to establish policy for SHA, although they work with and report regularly to SHA's Board of Commissioners and they also accept input from resident organizations.

(LeBlanc Decl. ¶ 4.) Mr. LeBlanc emphasizes that, by contrast, neither he nor Ms. Van Cleve have the authority to establish official policy for SHA. (*Id*. ¶¶ 5-6.) On this record, even viewing the evidence in the light most favorable to him, Mr. Jennings has not established a genuine issue of material fact regarding whether any of the SHA employees involved in this case acted with final policymaking authority.

ORDER- 12

### 3. Ratification

A municipal entity can be liable under § 1983 for an isolated constitutional violation when an official with final policymaking authority ratifies a subordinate's decision, thereby approving the decision and the basis for it. *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995); *see Christie*, 176 F.3d at 1238-39. "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it,'" *Christie*, 176 F.3d at 1239 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)), and that the policymaker's decision triggering liability was the product of a "conscious, affirmative choice" to ratify the conduct at issue, *Gillette*, 979 F.2d at 1347. On this record, even viewing the evidence in the light most favorable to Mr. Jennings, the court finds that Mr. Jennings has not shown a genuine issue of material fact regarding whether any SHA employees with official policymaking authority ratified the acts complained of in this case. Mr. Jennings has submitted no evidence that a SHA employee with official policymaking authority reviewed or approved any of the actions complained of by Mr. Jennings.

### 4. Deliberate Indifference

A municipal entity can be liable under § 1983 where its deliberate indifference led to an omission that caused the employee to commit the constitutional violation. *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1186 (9th Cir. 2002). "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id*. On this record, even viewing the evidence in the light most favorable to Mr. Jennings,

the court finds that Mr. Jennings has not shown a genuine issue of material fact regarding deliberate indifference. He has submitted no evidence to demonstrate an omission on the part of SHA or that SHA was on actual or constructive notice that such an omission would likely result in a constitutional violation.

In light of the foregoing, the court concludes that Mr. Jennings has not established a genuine issue of material fact that SHA may be held liable under § 1983 for the actions complained of in this lawsuit. Therefore, the court grants summary judgment in favor of SHA with respect to Mr. Jennings's § 1983 claim.

**D.     Supplemental Jurisdiction and Remaining Claims**

28 U.S.C. § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction over a claim if, *inter alia*, the district court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "To decline jurisdiction under § 1367(c)(3), the district court must first identify the dismissal that triggers the exercise of discretion and then explain how declining jurisdiction serves the objectives of economy, convenience and fairness to the parties, and comity." *Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint.*, 333 F.3d 923, 925 (9th Cir. 2003); *see Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995).

Here, the court finds that dismissal without prejudice of Mr. Jennings's remaining state-law claims is appropriate under § 1367(c)(3). The court's decision to grant summary judgment on Mr. Jennings's § 1983 claim triggers its exercise of discretion because this claim constituted the sole remaining claim over which the court exercised original jurisdiction. Next, considering the factors of economy, convenience, fairness,

and comity, the court finds that they weigh in favor of dismissal. The parties have not argued the merits of these claims and the court has not meaningfully considered them. Further, the Washington courts possess greater experience in analyzing the statutory claims raised by Mr. Jennings, particularly his RLTA claim, and hold a strong interest in addressing them. The court also notes that it forewarned Mr. Jennings that dismissal of these claims might be proper if all of his federal claims were dismissed. (*See* Dkt. 50.) On this record, the court declines to exercise jurisdiction under §1367(c)(3) with respect to Mr. Jennings's remaining state-law claims and dismisses them without prejudice to re-filing in state court.

## V. CONCLUSION

For the foregoing reasons, the court GRANTS SHA's motion to dismiss and/or for summary judgment (Dkt. # 65). The court hereby ORDERS as follows:

(1) The court grants summary judgment in favor of SHA with respect to Mr. Jennings's § 1983 claim;

(2) The court declines under § 1367(c)(3) to exercise jurisdiction as to Mr. Jennings remaining state-law claims and thus dismisses these claims without prejudice; and

(3) The court directs the clerk to enter judgment in conformity with this order.

Dated this 11th day of June, 2010.

_____
JAMES L. ROBART
United States District Judge